UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDON BRINEGAR,

    Plaintiff,

v.

DITECH FINANCIAL LLC, f/k/a
GREEN TREE SERVICING, LLC.,

    Defendant.

_____/

CASE NO.: 6:16-cv-432-OtL -31 GJK
JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Brandon Brinegar ("Mr. Brinegar"), by and through the undersigned counsel, sues Defendant, Ditech Financial LLC, f/k/a Green Tree Servicing, LLC ("Defendant"), and in support thereof respectfully alleges the following:

### INTRODUCTION

1.    Mr. Brinegar alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collections Practices Act, Chapter 559 *et seq.* ("FCCPA").

2.    The TCPA was enacted to prevent companies like Ditech Financial LLC, f/k/a Green Tree Servicing, LLC from invading American citizen's privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs.*, LLC, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

Page 1 of 16

4.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the

*1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

dinner at night; they force the sick and elderly out of bed; they hound us until we want to

rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings

presumably intended to give telephone subscribers another option: telling the autodialers

to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir.

2014).

5.     According to the Federal Communications Commission (FCC),

"Unwanted calls and texts are the number one complaint to the FCC. There are thousands

of complaints to the FCC every month on both telemarketing and robocalls. The FCC

received      more      than      215,000      TCPA      complaints      in      2014."

https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

6.     Likewise, the FCCPA is designed and adopted to reinforce individual

consumers' rights established by federal law.

## JURISDICTION AND VENUE

7.     This is an action for damages exceeding Seventy-Five Thousand U.S.

Dollars ($75,000.00) exclusive of interest, fees and costs.

8.     Jurisdiction and venue for purposes of this action are proper and conferred

by 28 U.S.C. § 1331.

9.     Venue is proper in this District as Plaintiff resides in this District, the

violations described in this Complaint occurred in this District, and Defendant transacts

business within this District.

## FACTUAL ALLEGATIONS

10.    Mr. Brinegar is a natural person, and citizen of the State of Florida, residing in Osceola County, Florida

11.    Mr. Brinegar is a "consumer" as defined in Florida Statute § 559.55(8).

12.    Defendant is a person collecting a consumer debt.

13.    Defendant sought to collect an alleged debt from Plaintiff.

14.    The alleged debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) as it is an alleged obligation arising from a personal, family or household transaction.

15.    Mr. Brinegar is the "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

16.    Defendant is a corporate entity responsible for attempting to collect a consumer debt from Plaintiff and is transacting business in the State of Florida.

17.    Defendant, Green Tree Servicing, LLC ("Defendant"), is a corporate entity which was formed in Delaware with its principal place of business located at 1100 Landmark Towers, 345 St. Peter Street, St. Paul, Minnesota 55102 and whom conducting business in the state of Florida with a registered agent, C T Corporation Systems, 1200 South Pine Island Road, Plantation, Florida 33324.

18.    Mr. Brinegar is the regular user and carrier of the cellular telephone number at issue, (407) 433-6488 (hereinafter "cellular telephone"), and was the called party of Defendant's hereinafter described calls.

19.     Defendant, at all times material hereto, was attempting to collect on a home mortgage, loan number 897968061 (hereinafter "subject account"), which was, and continues to be, serviced by Defendant.

20.     Defendant intentionally, knowingly and/or willfully harassed and abused Mr. Brinegar on numerous occasions by calling Mr. Brinegar's cellular telephone number, multiple times per day, at least One Hundred (100) times, from August 1, 2013 in an attempt to collect a debt and with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

21.     Upon information and belief, some or all of the calls Defendant made to Mr. Brinegar's cellular telephone number were made using an "automatic telephone dialing system" (hereinafter "Autodialer") which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

22.     Furthermore, each of the calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

23.     On or about August 1, 2013, Defendant initiated its campaign of phone calls to Plaintiff on Plaintiff's cellular telephone.

24.     Due to the high volume of calls Mr. Brinegar received from Defendant, the following is a sampling of the calls made by Defendant to Mr. Brinegar:

        i.     December 5, 2013 at 5:58 pm;

ii.     December 6, 2013 at 8:17 am;

iii.    December 6, 2013 at 9:03 am;

iv.     December 9, 2013 at 7:44 pm;

v.      December 10, 2013 at 2:17 pm;

vi.     December 10, 2013 at 4:56 pm;

vii.    December 10, 2013 at 5:50 pm;

viii.   December 10, 2013 at 5:51 pm;

ix.     December 13, 2013 at 11:51 am;

x.      December 13, 2013 at 11:55 am;

xi.     December 13, 2013 at 11:59 am;

xii.    December 13, 2013 at 5:20 pm;

xiii.   December 13, 2013 at 7:47 pm;

xiv.    December 13, 2013 at 8:18 pm;

xv.     December 13, 2013 at 8:51 pm;

xvi.    December 14, 2014 at 11:03 am;

xvii.   December 17, 2013 at 1:29 pm;

xviii.  December 18, 2013 at 4:49 pm;

xix.    December 21, 2013 at 1:39 pm;

xx.     December 23, 2013 at 12:16 pm;

xxi.    December 23, 2013 at 2:19 pm;

xxii.   December 23, 2013 at 6:16 pm;

xxiii.  December 24, 2013 at 8:53 am;

xxiv.    December 26, 2013 at 12:41 pm;

xxv.    December 26, 2013 at 9:50 am;

xxvi.    December 26, 2013 at 2:44 pm;

xxvii.    December 27, 2013 at 9:30 am;

xxviii.    December 27, 2013 at 3:18 pm;

xxix.    December 28, 2013 at 8:57 am;

xxx.    December 28, 2013 at 9:29 am;

xxxi.    December 30, 2013 at 11:02 am;

xxxii.    December 30, 2013 at 2:40 pm;

xxxiii.    December 30, 2013 at 5:15 pm;

xxxiv.    December 31, 2013 at 9:35 am;

xxxv.    January 3, 2014 at 9:35 am;

xxxvi.    January 6, 2014 at 7:37 pm;

xxxvii.    January 7, 2013 at 2:50 pm;

xxxviii.    January 8, 2014 at 8:40 am;

xxxix.    January 8, 2014 at 11:14 am;

xl.    January 8, 2014 at 11:15 am;

xli.    January 9, 2014 at 8:27 am;

xlii.    January 10, 2014 at 8:47 am;

xliii.    January 10, 2014 at 9:38 am;

xliv.    January 10, 2014 at 12:14 pm;

xlv.    January 10, 2014 at 3:21 pm;

xlvi.      January 13, 2014 at 3:29 pm;

xlvii.     January 13, 2014 at 8:15 pm;

xlviii.    January 14, 2014 at 2:44 pm;

xlix.      January 14, 2014 at 2:52 pm;

l.         January 15, 2014 at 8:27 am;

li.        January 15, 2014 at 8:36 am;

lii.       January 15, 2014 at 11:38 am;

liii.      January 16, 2014 at 8:48 am;

liv.       January 16, 2014 at 8:49 am;

lv.        January 16, 2014 at 8:50 am;

lvi.       January 16, 2014 at 9:35 am;

lvii.      January 16, 2014 at 2:37 pm;

lviii.     January 17, 2014 at 8:17 am;

lix.       January 18, 2014 at 9:21 am;

lx.        January 20, 2014 at 12:12 pm;

lxi.       January 21, 2014 at 3:49 pm;

lxii.      January 22, 2014 at 8:38 am;

lxiii.     January 23, 2014 at 8:44 am;

lxiv.      January 24, 2014 at 9:17 am;

lxv.       January 24, 2014 at 2:46 pm;

lxvi.      January 24, 2014 at 2:59 pm;

lxvii.     January 24, 2014 at 4:47 pm;

| lxviii. | January 27, 2014 at 1:19 pm; |
| lxix. | January 27, 2014 at 2:30 pm; |
| lxx. | January 27, 2014 at 3:36 pm; |
| lxxi. | January 27, 2014 at 5:05 pm; |
| lxxii. | January 27, 2014 at 6:38 pm; |
| lxxiii. | January 27, 2014 at 6:39 pm; |
| lxxiv. | January 28, 2014 at 2:09 pm; |
| lxxv. | January 28, 2014 at 2:28 pm; |
| lxxvi. | January 28, 2014 at 5:22 pm; |
| lxxvii. | January 28, 2014 at 6:19 pm; |
| lxxviii. | January 28, 2014 at 6:20 pm; |
| lxxix. | January 28, 2014 at 6:22 pm; |
| lxxx. | January 28, 2014 at 6:34 pm; |
| lxxxi. | January 28, 2014 at 7:09 pm; |
| lxxxii. | January 28, 2014 at 7:48 pm; |
| lxxxiii. | January 28, 2014 at 8:37 pm; |
| lxxxiv. | January 29, 2014 at 8:11 am; |
| lxxxv. | January 29, 2014 at 10:44 am; |
| lxxxvi. | January 29, 2014 at 11:16 am; |
| lxxxvii. | January 29, 2014 at 12:10 pm; |
| lxxxviii. | January 29, 2014 at 12:43 pm; |
| lxxxix. | January 29, 2014 at 12:45 pm; |

xc.    January 29, 2014 at 4:06 pm;

xci.    January 29, 2014 at 4:07 pm;

xcii.    January 29, 2014 at 5:12 pm;

xciii.    January 29, 2014 at 5:50 pm;

xciv.    January 30, 2014 at 8:38 am;

xcv.    January 30, 2014 at 2:10 pm;

xcvi.    January 30, 2014 at 3:43 pm;

xcvii.    January 30, 2014 at 5:08 pm;

xcviii.    January 30, 2014 at 5:37 pm;

xcix.    January 30, 2014 at 7:18 pm;

c.    January 30, 2014 at 7:27 pm;

ci.    January 30, 2014 at 7:30 pm;

cii.    January 30, 2014 at 8:46 pm;

ciii.    January 31, 2014 at 8:14 am;

civ.    January 31, 2014 at 10:46 am;

cv.    January 31, 2014 at 10:48 am;

cvi.    January 31, 2014 at 3:49 pm;

cvii.    January 31, 2014 at 4:31 pm;

cviii.    January 31, 2014 at 5:23 pm;

cix.    January 31, 2014 at 5:55 pm;

cx.    January 31, 2014 at 5:56 pm;

cxi.    January 31, 2014 at 5:57 pm;

cxii.     January 31, 2014 at 5:58 pm;

cxiii.    January 31, 2014 at 5:59 pm;

cxiv.     January 31, 2014 at 6:14 pm;

cxv.      January 31, 2014 at 6:15 pm;

cxvi.     January 31, 2014 at 6:16 pm;

cxvii.    January 31, 2014 at 6:19 pm;

cxviii.   January 31, 2014 at 6:45 pm;

cxix.     January 31, 2014 at 6:46 pm;

cxx.      January 31, 2014 at 7:02 pm;

cxxi.     January 31, 2014 at 7:15 pm;

cxxii.    January 31, 2014 at 7:20 pm;

cxxiii.   January 31, 2014 at 7:29 pm;

cxxiv.    January 31, 2014 at 7:31 pm;

cxxv.     January 31, 2014 at 7:33 pm;

cxxvi.    January 31, 2014 at 7:48 pm;

cxxvii.   January 31, 2014 at 7:57 pm;

cxxviii.  January 31, 2014 at 8:13 pm;

cxxix.    January 31, 2014 at 8:20 pm;

cxxx.     January 31, 2014 at 8:24 pm;

cxxxi.    January 31, 2014 at 8:30 pm;

cxxxii.   January 31, 2014 at 8:31 pm;

cxxxiii.  January 31, 2014 at 8:35 pm;

|       |       |
|-------|-------|
| cxxxiv. | January 31, 2014 at 8:37 pm; |
| cxxxv. | January 31, 2014 at 8:41 pm; |
| cxxxvi. | January 31, 2014 at 8:57 pm; |
| cxxxvii. | January 31, 2014 at 9:35 pm; |
| cxxxviii. | January 31, 2014 at 9:36 pm; |
| cxxxix. | February 3, 2014 at 8:41 am; |
| cxl. | February 3, 2014 at 8:46 am; |
| cxli. | February 4, 2014 at 8:24 am; and |
| cxlii. | February 7, 2014 at 4:21 pm. |

25.     Defendant attempted to utilize harassment to collect a debt from Mr. Brinegar through this campaign of telephone calls.

26.     Mr. Brinegar repeatedly requested Defendant to cease all calls to his cellular telephone including requests made specifically on December 10, 2013 at 5:50 pm, December 18, 2013 at 4:49 pm and January 27, 2014 at 6:38 pm.

27.     Defendant continued its harassing campaign of calls to Mr. Brinegar's cellular telephone despite receiving Mr. Brinegar's request to cease all calls to his cellular telephone number.

28.     Despite being able to communicate with Mr. Brinegar in numerous other ways, Defendant further attempted to contact Mr. Brinegar by calling Mr. Brinegar's fiancé, Suzanne, on her cellular telephone number.

29.     Suzanne notified Defendant to cease calling her cellular telephone number on at least five (5) occasions:

i.      January 23, 2014 at 8:46 am;

ii.     January 24, 2014 at 9:19 am;

iii.    January 27, 2014 at 1:21 pm;

iv.     January 31, 2014 at 8:36 pm; and

v.      January 31, 2014 at 8:40 pm.

30.     Further, Suzanne notified Defendant that Defendant was contacting the wrong party on several occasions, to include, but not limited to:

vi.     January 23, 2014 at 8:46 am;

vii.    January 24, 2014 at 9:19 am; and

viii.   January 27, 2014 at 1:21 pm.

31.     Defendant has, or should be in possession and/or control of, call logs, account notes, autodialed reports and/or other records that detail the exact number of all calls made to Plaintiff.

32.     Despite actual knowledge of their wrongdoing, Defendant continued its campaign of abuse, calling Plaintiff despite not having Plaintiff's express permission to call his cellular telephone number.

33.     Defendant has a corporate policy to use an Autodialer or a pre-recorded or artificial voice, and to make autodialed calls just as it did to Mr. Brinegar's cellular telephone in this case, with no way for the called party and recipient of the calls, or Defendant, to permit the removal of Mr. Brinegar's cellular number.

34.     Defendant's corporate policy and procedures are structured as to continue to call individuals like Mr. Brinegar, despite these individuals revoking any consent Defendant may have had to make such calls.

35.     Defendant's corporate policy and procedures provided no means for Mr. Brinegar to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Mr. Brinegar from Defendant.

36.     Defendant has a corporate policy of using an Autodialer or a prerecorded or artificial voice message to collect debts from individuals such as Mr. Brinegar for its financial benefit.

37.     Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

38.     Defendant has numerous complaints across the country against it asserting that its Autodialer continues to call people who have revoked consent to be called.

39.     Defendant knowingly employs methods and/or has a corporate policy designed to harass and abuse individuals.

40.     Defendant knowingly employs methods that do not permit the cessation of or suppression of autodialed calls to Mr. Brinegar's cellular telephone.

41.     None of Defendant's telephone calls placed to Mr. Brinegar were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

42.     As a consequence of these collection efforts, Mr. Brinegar suffered:  loss of happiness, concentration, sleep and reputation,  strain to his familial relationships, severe stress, worry, embarrassment, humiliation, intimidation, pain and suffering,

emotional and mental distress, nausea, night sweats, headaches and loss of work time as a direct and proximate result of the repetitive attempted collection efforts including the attempted collection efforts to procure amounts far in excess of any amount rightfully owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

43.     Plaintiff re-alleges and fully incorporates Paragraphs one (1) through forty-two (42) above as if fully stated herein.

44.     Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

45.     Defendant willfully and/or knowingly violated the TCPA, with respect to all of its calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's express consent.

46.     Defendant willfully and/or knowingly violated the TCPA, specifically for each of the calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant on or about May 18, 2015, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged perceived consent Defendant believed it had to contact Plaintiff, and told Defendant to cease calling Plaintiff.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Ditech Financial LLC, f/k/a Green Tree

Servicing, LLC, for statutory damages, actual damages, treble damages, costs, interest, and any other such relief the Court may deem just and proper.

**COUNT II**
**(Violation of the FCCPA)**

47.     Plaintiff re-alleges and fully incorporates Paragraphs one (1) through forty-two (42) above as if fully stated herein

48.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

49.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse the debtor.

50.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse the debtor.

51.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Ditech Financial LLC, f/k/a Green Tree Servicing, LLC for statutory damages, punitive damages, actual damages, treble damages, costs, interest, and any other such relief the Court may deem just and proper.

Respectfully submitted,

Jared M. Lee, Esquire
Florida Bar No.: 0052284
Morgan & Morgan, Tampa, P.A.
20 N. Orange Avenue
Suite 1600
Orlando, FL 32801

Page 15 of 16

Tele:  (407) 420-1414
Fax:  (407) 245-3485
Attorney for Plaintiff(s)
JLee@ ForThePeople.com
JMLPleadings@ForThePeople.com

Page 16 of 16